## NEU *v.* WOODS

[No. 15,444. Filed April 14, 1937.]

*Edward E. Meyer, Isadore J. Fine, Frederick P. Bamberger,* and *Jesse D. Fine,* for appellant.

*Sanford K. Trippett,* and *French Clements,* for appellees.

Kime, J.—The appellee filed a complaint in one paragraph on the theory of an alleged breach of an express oral contract. The amended complaint is as follows:

"The plaintiff complains of the defendant and says that on or about the first day of January, 1931, the defendant orally offered to sell to this plaintiff ten shares of Leich & Company Preferred Stock for Eight Hundred and Fifty Dollars ($850.00).

"The plaintiff states that he accepted the said offer to sell, and did purchase the said preferred stock, from the defendant and paid to the defendant the sum of Eight Hundred and Fifty Dollars, and did all things required of him to be done in the purchase of said stock. The plaintiff states further that the defendant has failed to deliver to this plaintiff the said stock by reason of which the plaintiff has been damaged in the sum of Twelve Hundred Dollars ($1200.00).

"Wherefore, the plaintiff sues and demands judgment against the defendant for his damages in the sum of Twelve Hundred Dollars ($1200.00), together with his costs and all other proper relief."

Following intermediate pleading, which we need not discuss for the purpose of this opinion, the appellant answered in general denial following which there was a trial by the court. Upon request properly made a special finding of facts was made by the court who stated conclusion of law thereon, which special finding of facts and conclusions of law are as follows:

"Finding number one (1). In the month of January, 1931, the *plaintiff desired to buy ten (10) shares of the preferred stock* of Charles Leich and Company, a corporation. At the same time the *defendant owned more than one hundred (100)* shares of COMMON stock of Charles Leich and Company, a corporation, which was

assigned to the Lincoln Savings Bank of Evansville, Indiana, as collateral security for the payment of the promissory notes owing by the defendant to said Lincoln Savings Bank.

"Finding Number two (2). That in the month of January, 1931, one John P. Moore, who was then engaged in selling stocks and bonds and other securities upon a commission basis knew that the defendant owned stock of said Charles Leich and Company and that the same was held by the Lincoln Savings Bank as collateral security for indebtedness owing by the defendant to said Lincoln Savings Bank and likewise knew that the defendant and said Lincoln Savings Bank desired to sell all or a part of said stock and to apply the proceeds of such sale on said indebtedness owing by defendant Neu to said Lincoln Savings Bank.

"Finding Number three (3). That the said John P. *Moore,* with the knowledge of the fact set out in finding number two, in the month of January, 1931, *solicited of the plaintiff a sale to him of ten (10) shares of preferred stock* of said Charles Leich and Company and represented to him that such stock *could be obtained at the Lincoln Savings Bank of Evansville,* Indiana, for the price of Eighty-five ($85.00) dollars per share of the par value of one hundred ($100.00) dollars per share. Whereupon the *plaintiff agreed to purchase ten shares of preferred stock* of Charles Leich and Company of the par value of One hundred ($100.00) dollars per share for Eight hundred and fifty ($850.00).

"Finding Number four (4). That immediately after the plaintiff had so agreed to purchase ten (10) shares of said preferred stock of Charles Leich and Company for Eight hundred and fifty ($850.00) Dollars the said John P. *Moore informed the defendant that he had an offer* of Eight hundred and fifty ($850.00) Dollars for *one hundred (100) shares of defendant's common stock*

of Charles Leich and Company and the defendant Neu agreed to sell one hundred shares of common stock of Charles Leich and Company for the sum of Eight Hundred and fifty ($850.00) Dollars. That thereafter the said John P. *Moore informed the plaintiff* that he had procured for him *ten (10) shares of preferred* stock of Charles Leich and Company and that the same was held by the Lincoln Savings Bank as collateral security for a loan and that in order to complete said sale the plaintiff should go to the Lincoln Savings Bank and that said Bank was authorized and could deliver to the plaintiff said ten (10) shares of the preferred stock of Charles Leich and Company.

"Finding Number five (5). That the plaintiff went to the Lincoln Savings Bank to complete the purchase of ten (10) shares of the preferred stock of Charles Leich and Company and so informed the officers and agents of Lincoln Savings Bank then in the Bank conducting its business and that he, the plaintiff, desired to procure a loan of eight hundred and fifty ($850.00) Dollars from said Bank to pay for said stock and to assign to it said ten (10) shares of the preferred stock of Charles Leich and Company; whereupon the plaintiff executed to the Lincoln Savings Bank his promissory note for the principal sum of eight hundred and fifty ($850.00) Dollars, seven hundred and fifty ($750.00) Dollars of which said loan was applied on an indebtedness owing by the defendant to said Bank and one hundred ($100.00) Dollars was paid over to the said John P. Moore for his services in negotiating said sale. That at said time said Lincoln Savings Bank informed the plaintiff that the stock certificate, including the shares of stock the plaintiff had purchased was for a greater number of shares than the plaintiff had purchased. That it would be necessary to surrender said stock certificate and have new certificates issued in order that the plaintiff might

receive the proper number of shares; that when said certificates were returned to the Lincoln Savings Bank said Bank would attach the plaintiff's certificate to his promissory note as collateral security. That Lincoln Savings Bank caused the certificate for more than one hundred (100) shares of common stock of Charles Leich and Company assigned to it by the defendant as collateral security to be surrendered and a new certificate issued and returned to said Bank. Whereupon it attached to the said note of the plaintiff a stock certificate of Charles Leich and Company for one hundred (100) shares of the common stock of said Company.

"Finding Number six (6). That during all the negotiations set out in finding number five the plaintiff and the defendant and said Lincoln Savings Bank knew that the proposed sale of stock of Charles Leich and Company was a sale by the defendant to the plaintiff, *but* THE PLAINTIFF DID NOT KNOW *that the defendant was assuming to sell* COMMON *stock of said company*.

"Finding Number seven (7). That when the promissory note of the plaintiff executed to Lincoln Savings Bank for Seven hundred and fifty dollars ($750.00) * became due the plaintiff went to said Bank and renewed the same and then learned for the first time that there had been transferred to him a stock certificate for one hundred (100) shares of common stock of Charles Leich and Company instead of ten (10) shares of the preferred stock of Charles Leich and Company and he so informed the Lincoln Savings Bank. That thereupon the Lincoln Savings Bank requested the plaintiff to execute on said certificate an assignment of said stock certificate and *that* IT *would procure for him,* the plaintiff instead thereof, a certificate for ten (10) shares of preferred stock of Charles Leich and Company; that thereupon

---

* This must be $850.00 as elsewhere in the findings it is indicated that he gave a note for $850.00.

the plaintiff executed an assignment of said certificate of common stock *in the belief that the Bank would* cause the same to be exchanged for ten (10) shares of preferred stock of said Charles Leich and Company, but the Lincoln Savings Bank never procured such exchange but continued to hold the certificate so assigned for the renewal note so long as said Lincoln Savings Bank continued to own said promissory note of the plaintiff.

"Finding Number eight (8). That after the occurrence of the facts set out in finding number seven all of the assets of the Lincoln Savings Bank were sold, assigned, and transferred to Lincoln Liquidating Corporation, including the promissory note owing by the plaintiff and said one hundred (100) shares of the common stock of Charles Leich and Company referred to in finding number seven as collateral security for said note. That said note has never been paid.

"Finding Number nine (9). That at the time the plaintiff executed his said original note for the principal sum of Eight hundred and fifty ($850.00) Dollars and at the time the proceeds of said note were applied on the indebtedness of the defendant, Neu, to the Lincoln Savings Bank, the preferred stock of Charles Leich and Company was of the fair market value of Eighty-five ($85.00) Dollars per share and the fair market value of the common stock of Charles Leich and Company was four ($4.00) Dollars a share.

"On the foregoing special finding of facts the court states the law to be:

"Conclusion of Law Number One (1). The Lincoln Liquidating Corporation holds the one hundred (100) shares of common stock of Charles Leich and Company as collateral security for the indebtedness evidenced by and growing out of the renewal promissory note executed by the plaintiff to the Lincoln Savings Bank and by said Savings Bank assignment to Lincoln Liquidat-

ing Corporation, superior to any claim thereto by either the plaintiff or the defendant.

"Conclusion of Law Number Two (2). The plaintiff is entitled to recover judgment against the defendant for four hundred and fifty ($450.00) dollars, together with interest thereon at the rate of six per cent. per annum from the 31st day of January, 1931."

The appellant excepted to the finding of facts and conclusions of law. The court rendered judgment on the conclusions in the sum of $450.00 together with interest at six per cent. A motion for new trial setting up as grounds that the decision was not sustained by sufficient evidence and that it was contrary to law was overruled. Other grounds were set out but there are the only ones discussed here. Errors assigned and discussed upon which the appellant relies for reversal are that the court erred in conclusions of law numbered 1 and 2 and that the court erred in overruling the motion for new trial.

The special finding of facts must contain all the facts necessary to recovery. On appeal all facts not specifically set out in the special findings will be regarded as not having been proven by the party having the burden of the issue and the failure to find a fact essential to recovery is equivalent to a finding against the party having the burden of proving the same. *Universal Insurance Co. v. Glover* (1934), 100 Ind. App. 327, 195 N. E. 583.

The first conclusion of law is outside of the issues presented in this cause and is therefore a nullity and must be disregarded. *Hatfield et al.* v. *Rooker et al.* (1914), 56 Ind. App. 1, 104 N. E. 798; *Fleming et al.* v. *Greener et al.* (1909), 173 Ind. 260, 90 N. E. 72.

In order to sustain a recovery in favor of the appellee here it was necessary that the special finding of facts

show that the appellant agreed to sell and the appellee agreed to buy the same identical stock and the failure to so find is equivalent to a finding against the appellee that there was no such agreement. Here the person purporting to sell this stock could have been at the most, (conceding he was an agent of the appellant) only a special agent and could not bind the appellant beyond the express power conferred upon him.

The complaint here is based solely on the theory of the alleged breach of an express oral contract. The appellee is bound by this theory and a recovery herein can not be sustained upon the theory of an implied contract or upon any other theory. Inasmuch as the finding shows affirmatively that there was no express contract the appellee was not entitled to recover. *Indianapolis Real Estate Board* v. *Willson et al.* (1933), 98 Ind. App. 72, 187 N. E. 401; *Southern Indiana Gas and Electric Co.* v. *Winstead* (1930), 92 Ind. App. 327, 175 N. E. 281.

Here the finding of facts fails to show that there was a contract between the parties and in the absence of such a contract there can be no recovery. There was never a meeting of the minds between the parties as to the specific thing which was to be bought and sold, consequently no contract was ever consummated. *Corydon Milling Co.* v. *Noblesville Milling Company* (1919), 69 Ind. App. 491, 122 N. E. 362. There was a total failure here on the part of the trial court to find any facts to sustain conclusion numbered 2.

The appellee contends that the stock broker was the agent of the appellant and that such agency was established by reason of the alleged ratification of the broker's acts by the appellant. Before the unauthorized act of an agent can be ratified it is necessary that it be shown that the acceptance or re-

tention of the benefits was done with the knowledge of the facts. The findings here fail to disclose that there was ever any knowledge on the part of the appellant of any agreement by the broker to sell preferred stock to the appellee. In fact the only finding on this subject is that "the defendant Neu agreed to sell one hundred shares of common stock."

Conclusion of law numbred 2 is not sustained by the finding of facts and is contrary to law. We believe that the ends of justice will be best served if a new trial is had herein. The judgment herein is therefore reversed with instructions to grant appellant's motion for a new trial and for such further proceedings not inconsistent with this opinion.