# FIRST NATIONAL BANK OF DANVERS *vs.* FIRST NATIONAL BANK OF SALEM.

Suffolk.   January 16, 1890. — February 28, 1890.

Present: DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Bank Check — Forgery — Negligence.*

A forged check, purporting to be drawn upon a bank by a firm which was one of its customers, was made payable to a payee named or bearer. Another bank, of which the firm was not a customer, when the check was presented to it by an unknown person, without attempting to identify him, and upon his indorsing it in the payee's name, cashed it, and was credited with the amount as money by the drawee. The drawee negligently failed to discover the forgery for a month or two, but then immediately notified the bank cashing the check, which was not prejudiced by the delay. *Held,* that the bank cashing the check must bear the loss.

CONTRACT to recover back money paid by the plaintiff on a forged check cashed by the defendant. At the trial in the

Superior Court, without a jury, before *Barker*, J., the following facts appeared in evidence.

A day or two before September 26, 1885, a person presented at the counter of the defendant bank, and requested to have cashed, a check, of which the following is a copy: "$188.00. The First National Bank, Danvers, Mass., Sept. 10, 1885. Pay to Joel Kimball, or bearer, one hundred and eighty-eight dollars. E. and A. Mudge & Co." The person who presented the check was not known to either of the officers of the defendant bank who saw him, and was not one of its customers. One Nichols, the defendant's teller, to whom he made the application, asked him to write his name on the back of the check, and while he was so engaged Nichols asked the assistant cashier " if E. and A. Mudge & Co. were all right," and, upon receiving an affirmative reply, received the check from such person, who had meanwhile written the name " Joel Kimball " across the back of it, and paid him in money the amount called for by the check. The check was then stamped on the back by the defendant, " For deposit in the National Bank of Redemption, to credit of First National Bank of Salem, E. H. Payson, cashier," and in due course of business was remitted by the defendant for collection to the National Bank of Redemption, which was the Boston correspondent of both the plaintiff and the defendant, and which bank credited that amount to the account of the defendant, and charged it to the plaintiff, to which it was remitted. On September 26, 1885, the check was received by the plaintiff bank, which credited it to the National Bank of Redemption, and charged it to E. and A. Mudge & Co., who had a deposit with the plaintiff bank. The signature to the check was not that of any member of that firm, and the man who presented and thus indorsed the check and received the money was not Joel Kimball of Danvers, the only person of that name found upon inquiry instituted after the discovery of the forgery. Late in November or early in December, 1885, the check was for the first time shown to one of the firm, to show that its balance was not so large as he supposed, and he declared the signature to be a forgery, and immediately the defendant was then and for the first time so notified. The account of that firm with the plaintiff was not an active account,

and no check had been drawn against it from the July preceding until the forged check was paid, their balance standing during the intermediate time, in accordance with an understanding between the firm and the plaintiff bank, at about one thousand dollars. The pass-books and checks of depositors were, in the ordinary course of business, returned to them at the beginning of each month for examination and verification, and correction of mistakes; but this check lay in a drawer at the plaintiff bank from the time it was received until called to the firm's attention. It is the general custom among banks to require that persons presenting checks of this kind to be cashed should be identified before the money is paid; and the defendant bank did not very frequently cash checks drawn on other banks over its counter, and then it was generally done as an accommodation to customers.

The judge found that the indorsement, Joel Kimball, was so apparently in the same handwriting with the name Joel Kimball in the body of the check as to call attention to that circumstance upon inspection.

The defendant contended that on the above facts the plaintiff was not entitled to recover back the amount of the check. The judge found that the defendant was negligent in cashing the check without more inquiry as to its genuineness; that the plaintiff was also negligent in not having more quickly ascertained that it was a forgery, and given notice to the defendant; but that in fact the negligence of the plaintiff had not prejudiced the defendant, and found for the plaintiff; and the defendant alleged exceptions.

*G. B. Ives*, for the defendant.

*C. T. Gallagher & H. R. Bailey*, for the plaintiff.

DEVENS, J. In the case at bar, the plaintiff seeks to recover from the defendant the amount of a forged check in the name of one of the plaintiff's customers, for which it had given the defendant credit as money.

In the usual course of business, if a check purporting to be signed by one of its depositors is paid by a bank to one who, finding it in circulation or receiving it from the payee by indorsement, took it in good faith for value, the money cannot be recovered back on the discovery that the check is a forgery. It

is presumed that the bank knows the signature of its own customers, and therefore is not entitled to the benefit of the rule which in cases of forgery permits a party to recover back money paid under a mistake of fact as to the character of the instrument by which the fraud has been effected. This presumption is conclusive only when the party receiving the money has in no way contributed to the success of the fraud, or the mistake of fact under which the payment has been made. In the absence of actual fault on the part of the drawee, his constructive fault in not knowing the signature of the drawer and detecting the forgery will not preclude his recovery from one who took the check under circumstances of suspicion without proper precaution, or whose conduct has been such as to mislead the drawee or induce him to pay the check without the usual security against fraud. *National Bank of North America* v. *Bangs*, 106 Mass. 441, 445. Where a loss which must be borne by one of two parties alike innocent of the forgery can be traced to the neglect or fault of either, it is reasonable that it should be borne by him, even if innocent of any intentional fraud, through whose means it has succeeded. *Gloucester Bank* v. *Salem Bank*, 17 Mass. 33. To entitle the holder to retain money obtained by a forgery, he should be able to maintain that the whole responsibility of determining the validity of the signature was placed upon the drawee, and that the vigilance of the drawee was not lessened and that he was not lulled into a false security by any disregard of duty on his own part, or by the failure of any precautions which from his implied assertion in presenting the check as a sufficient voucher the drawee had a right to believe he had taken. *Ellis* v. *Ohio Ins. & Trust Co.* 4 Ohio St. 628. *Rouvant* v. *San Antonio National Bank*, 63 Texas, 610. *First National Bank of Quincy* v. *Ricker*, 71 Ill. 439.

In the case at bar, it is found that the defendant was guilty of negligence in cashing the check without more inquiry as to its genuineness, and this finding is fully supported by the facts. The person who presented the check to the defendant bank was not known to either of its officers, and was not one of its customers. No attempt to have him identified was made, and without identification the money was paid over upon his indorsement on the check of the name of " Joel Kimball," the check

being payable to "Joel Kimball, or bearer." The nominal drawer of the check, whose name was forged, was not a customer of the defendant. It is altogether probable that, if the defendant before it cashed the check had made proper inquiry, the utterer of it would not have remained to encounter any such investigation, and if he had, it would readily have been ascertained that he was not the reputable person of the name of Joel Kimball who resided in Danvers. There was also evidence of the general custom of banks, in paying such checks, to have the person presenting them identified.

When this check was forwarded by the defendant for redemption, the plaintiff was without the means it would have had if it had been presented at its own counter of ascertaining the character of the person offering it. It had a right to believe that the defendant, in cashing a check purporting to be drawn by one not its own customer or entitled to draw upon it, had by the usual and proper investigation satisfied itself of its authenticity. The indorsement, which was not necessary to the transfer of the check, was a guaranty of the signature of the drawer, and the plaintiff had a right to believe that the indorser was known to the defendant by proper inquiry.

It is found that the plaintiff was negligent in not having more quickly ascertained that the check was a forgery, and in not having given notice to the defendant thereof. It is also found that in fact this negligence has not prejudiced the defendant. This negligence of the plaintiff apparently resulted from the circumstance that the account of its depositor was not what is termed an "active" account, by which we infer is intended one in which deposits and checks are frequent, and which is regularly settled at the end of each month. Even if the fact that the check when paid reduced the amount of the deposit below that which the depositor, as it was understood between him and the plaintiff, was to keep, or if any other circumstances should have called the attention of the plaintiff to the forgery, the original fault was still that of the defendant in paying the check without proper investigation. The plaintiff acted with entire promptitude when the forgery was discovered, and no negligence on its part has prejudiced the defendant. When the check was forwarded for redemption, it was entirely natural that the plaintiff

should have been misled, and induced to allow the same in settlement without the scrutiny it would have exercised had not the defendant given currency thereto.

The defendant deems that the case of the *Bank of St. Albans* v. *Farmers' & Mechanics' Bank*, 10 Vt. 141, resembles the case at bar in every respect, and, if it is to be followed, is decisive. We do not so consider it. While in that case there was a delay on the part of the plaintiff in notifying the defendant that the check received from it was forged, the question whether there had not been negligence on the part of the defendant in originally taking the check without proper inquiry, and thus of contributing to the error into which the plaintiff fell in giving the defendant credit therefor, was not raised nor discussed. The only question of that nature there considered was whether it was the duty of the defendant to have communicated suspicions which occurred to it after the transaction. An interpretation such as the defendant gives to this case would make it conflict with the decision in *National Bank of North America* v. *Bangs*, in which it is cited and considered. That decision strongly sustains the result which we have reached in the case at bar.

*Exceptions overruled.*